THOMAS J. STEWART, Appellant, v CONTINENTAL COPPER AND STEEL INDUSTRIES, INC., Respondent.

First Department, April 5, 1979

---

**APPEARANCES OF COUNSEL**

*William Joseph Apuzzo* for appellant.

*Norman L. Faber* of counsel *(Hall, Dickler, Lawler, Kent & Howley,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

In this action, plaintiff Stewart seeks a declaration that he is entitled to indemnification from defendant Continental Copper and Steel Industries, Inc., for legal expenses he incurred in connection with his appearance before a Federal Grand Jury in San Diego.

The basic facts underlying this controversy are not in dispute. Plaintiff was employed by defendant, a Delaware corporation, from November 15, 1971 until his resignation on August 31, 1976, in the capacity of both vice-president and president. In June of 1977, plaintiff was contacted by Brian Robbins, an Assistant United States Attorney, who sought to interview him in New York City concerning the Justice Department's ongoing investigation in the copper wire industry. In a subsequent conversation, Robbins advised the plaintiff to retain counsel. Plaintiff made several calls to Herman Keller, the chief legal officer for the defendant, to apprise him of Robbins' request for an interview and his suggestion that counsel be retained. Keller advised plaintiff that it would not be appropriate for him to represent the plaintiff. Keller did tell plaintiff that he was free to seek his own legal representation. Keller stated that he did not believe that there was any reason why the plaintiff should not appear at the interview and tell the truth. Previously, Keller had voluntarily appeared before the San Diego Grand Jury investigating the copper wire industry. He knew the defendant was a "subject" of the investigation but he did not believe that the defendant was a "target" of the investigation.

On or about July 5, 1977, plaintiff called William Joseph Apuzzo, Esq., to inquire about legal representation in the Grand Jury investigation. On July 15, 1977, plaintiff signed a retainer agreement with Apuzzo pursuant to which plaintiff agreed to pay a fee of $100 per hour against a minimum fee of $15,000, plus $700 per day for time spent by Apuzzo in California or other distant jurisdictions. By letter, dated August 3, 1977, Apuzzo informed Keller of his retainer agreement with plaintiff; he also asked for a check in the sum of $15,000. In a letter, dated August 5, 1977, Gerald Dickler, a member of defendant's outside counsel, stated that the possi-

bility of indemnification for reasonable counsel fees might arise in the future but that no basis was presented for such action under the then existing facts.

Apuzzo did meet with Robbins in New York City during July of 1977. Dwight Moore, the Chief of the Anti-trust Division in Los Angeles, sent a letter, dated August 25, 1977, to Apuzzo. In that letter, Moore informed Apuzzo that it was the Government's intention to subpoena the plaintiff and grant him "use" immunity under section 6001 *et seq.* of title 18 of the United States Code. That letter concluded with this paragraph: "In the case of Mr. Stewart, I have determined that the public interest would not warrant his future prosecution in the event he cooperates fully with our investigation and testifies candidly before the Grand Jury. Therefore, I have not made and do not intend to make any attempt to document or isolate the evidence existing against him prior to his testimony". Plaintiff was subpoenaed on August 22, 1977 and he testified before the Grand Jury on September 14, 1977 under a grant of "use" immunity. The plaintiff was never indicted by the Grand Jury.

■ Thereafter, the plaintiff sought indemnification from the defendant for the $19,790.11 which he expended in appearing before the Grand Jury. The defendant did not challenge the fact that the plaintiff was called before the Grand Jury as a result of his prior position with that firm. However, the defendant did refuse indemnification on the ground that the plaintiff's appearance as a witness did not fit within the technical language of either article TENTH of the certificate of incorporation or subdivision (c) of section 145 of title 8 of the Delaware Code, the present mandatory indemnification statute. Plaintiff then brought this proceeding for a declaration of his rights as to indemnification. For the reasons developed below, the entire bench believes that the plaintiff should be indemnified under subdivision (c) of section 145 of title 8 of the Delaware Code. Justice MARKEWICH and I go further and find that the plaintiff is entitled to recover under article TENTH of the certificate of incorporation.

Article TENTH was adopted at the time of defendant's incorporation in the early 1940's and it was conformed with the predecessor indemnification statute (Del Code, tit 8, § 122, subd [10]). Article TENTH reads as follows: "TENTH: Each person who is, has been or hereafter shall become a director, officer or employee of the Corporation or who is, has been or

hereafter shall become a director, officer or employee of any corporation which he served as such at the request of the Corporation, and the estate of each such person, shall be indemnified by the Corporation against the reasonable expenses including attorney's fees, actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which such person or estate is a party by reason of the fact that he, his testator or intestate is or was a director, officer or employee of the Corporation, or of any corporation which he served as such at the request of the Corporation, or in connection with any appeal therein, except in relation to matters as to which it shall be finally adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties. The right of indemnification shall also include indemnification for the reasonable cost of settlement made with a view to avoiding costs of litigation. The determination of the amount payable by way of indemnification shall be made either by the court in such litigation or by the vote of a majority of the entire Board of Directors, but the director or directors to be indemnified shall not vote thereon. Such rights of indemnification shall not be deemed exclusive of any other rights or remedies which such director, officer or employee may have independently hereof. In the event that the determination of an amount payable by way of indemnity is made by the Board of Directors or in any manner otherwise than pursuant to court order, the Corporation shall within eighteen months from the date of payment, mail to its stockholders of record at the time entitled to vote for the election of directors a statement specifying the persons paid, the amounts of the payments, and the final disposition of the litigation. The Corporation shall have the right to intervene in and defend all such actions, suits or proceedings brought against any person or former director, officer or employee of the Corporation."

In 1967, subdivision (10) of section 122 of title 8 of the Delaware Code was replaced by section 145 of title 8 of the Delaware Code. To the extent here relevant, section 145 of title 8 of the Delaware Code provides:

"§ 145. Indemnification of officers, directors, employees and agents; insurance.

"(a) A corporation may indemnify any person who was or is a party or is threatened to be made a party to any threatened,

pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that he is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful. * * *

"(c) To the extent that a director, officer, employee or agent of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b), or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith. * * *

"(f) The indemnification provided by this section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person."

The court at Special Term denied plaintiff's motion for summary judgment and granted defendant's motion for that same relief. The court reasoned that the plaintiff was merely a "witness" before the Federal Grand Jury. In light of the fact that he never became a "party" to that proceeding, the

indemnification formula in article TENTH was never triggered. The court did not discuss the applicability of section 145 of title 8 of the Delaware Code.

■ The defendant is a foreign corporation authorized to do business in New York State. Since its shares are traded on the New York Stock Exchange, it is exempt from the indemnification provisions of sections 721 through 726 of the Business Corporation Law (§ 726, subd [d]; § 1319, subd [a], par [4]; § 1320, subd [a], par [1]). Consequently, plaintiff's claim for indemnification must be decided under Delaware law.

The Superior Court of Delaware has made the following observation with regard to title 8 of the Delaware Code (§ 122, subd [10]; § 145) (*Merritt-Chapman & Scott Corp. v Wolfson,* 321 A2d 138, 141 [Del]):

"The policy of the statute and its predecessor has been described as follows, Folk, The Delaware General Corporation Law, 98 (1972):

"The invariant policy of Delaware legislation on indemnification is to 'promote the desirable end that corporate officials will resist what they consider' unjustified suits and claims, 'secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated.' *[Essential Enterprises Corp. v. Automatic Steel Prods., Inc.,* 39 Del. Ch. 371, 164 A. 2d 437, 441-442 (Del. Chanc. 1960).] Beyond that, its larger purpose is 'to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.' *[Mooney v. Willys-Overland Motors, Inc.,* 204 F. 2d 888, 898 (3d Cir. 1953)]."

To effect the policy goals delineated in *Merritt-Chapman,* the Delaware Legislature has also made the present statute nonexclusive (Del Code, tit 8, § 145, subd [f]). Therefore, even though article TENTH is based upon the predecessor statute, it is still operable since it does not violate any public policy interest or limitation expressed or embodied in the provisions of the present statute (see, generally, Mattar, A Directors' and Trustees' Guide to Indemnification and Liability Insurance, 51 NYSBJ, 13, 57, 58).

With regard to plaintiff's claim for recovery under article TENTH, it should be observed that section 64 of the former New York General Corporation Law was substantially the same as subdivision (10) of section 122 of title 8 of the

Delaware Code. In *Matter of Schwarz v General Aniline & Film Corp.* (305 NY 395, 403), a four-member majority of the Court of Appeals found that the reference in section 64 to "any action, suit or proceeding" did not cover a criminal proceeding. In the course of the decision, Judge DESMOND, speaking for two other majority Judges, stated: "We note, too, that the quite similar New Jersey, Kentucky and Delaware statutes set out in an appendix to the Law Revision Commission's 1945 Report, all include the same verbiage: 'action, suit or proceeding', and it is not claimed that any of those statutes have ever been held to contemplate the reimbursement of lawyer's fees in criminal trials. Our own conclusion is that the draftsman who was responsible for the statutory language: 'any action, suit or proceeding' was being over-cautious in making sure that the law would apply in an 'action' at law, a 'suit' in equity, or a special 'proceeding'."

It could be argued, from the foregoing passage, that the *Schwarz* court was making a determination that subdivision (10) of section 122 of title 8 of the Delaware Code did not cover indemnification in either a criminal proceeding or a criminal investigative proceeding. However, we find that the above-quoted excerpt from *Schwarz* is not binding on the facts in this case. First of all, it should be emphasized that, in *Schwarz,* Judge CARSWELL wrote his own concurring majority opinion which made no reference to the Delaware law of indemnification. Likewise, Judge FULD, writing for himself and the other two members of the dissent, made no comment on Delaware law. Thus, four members of the *Schwarz* court did not join in Judge DESMOND's statement as to the State of Delaware's law in the indemnification area. Hence, Judge DESMOND's passing remarks must be considered as dicta for they were not necessary for the final determination in *Schwarz* nor were they even adopted by four members of that court (1 Carmody-Wait 2d, NY Prac, §§ 2:54; 2:55). Secondly, as was noted by Judge CARSWELL *(Matter of Schwarz v General Aniline & Film Corp., supra,* p 405), section 64 of the General Corporation Law was strictly construed by the four-member majority. The policy pronouncement in *Merritt-Chapman (supra)* suggests a more expansive approach to indemnification that does not preclude recovery in either a criminal or a criminal investigative proceeding if a corporate official has upheld his honesty and integrity in the service of the corporation.

If Delaware law had been particularly relevant to or controlling upon the facts presented in *Schwarz,* the parties would have cited and the court would have explored a prior opinion of the Delaware Supreme Court in *Blish v Thompson Automatic Arms Corp.* (30 Del Ch 538). *Blish* was a highly complex stockholders' derivative suit. To the extent here relevant, it should be stressed that the Delaware court upheld the legitimacy of a $9,000 legal fee paid by defendant Thompson for services rendered by attorneys in representing a corporate officer in investigations conducted by both the Securities and Exchange Commission and the New York State Attorney-General (p 607). The court observed that both investigations had been ultimately closed to the satisfaction of Thompson. Furthermore, the court noted that the legal services were performed for and inured directly to the benefit of Thompson.

Professor Folk states that subdivision (a) of section 145 of title 8 of the Delaware Code confirms the result of *Blish v Thompson Automatic Arms Corp., supra,* and sustains indemnification for expenses incurred by an officer in an S.E.C. investigation of his possible criminal violations where the investigation was ultimately closed to the satisfaction of the corporation. (Folk, Delaware General Corporation Law: A Commentary and Analysis, pp 98, 99.) However, Professor Folk does not comment upon whether *Blish* was in accord with the predecessor statute (Del Code, tit 8, § 122, subd [10]). The decision of the lower court in *Blish* was rendered before the 1943 enactment of subdivision (10) of section 122 of title 8 of the Delaware Code. However, the Delaware Supreme Court rendered its determination in *Blish* at a time when subdivision (10) of section 122 of title 8 of the Delaware Code was in force. While the Supreme Court did not state the specific legal basis for allowing the award of legal fees, its ruling is some evidence of the expansive approach to indemnification taken by the Delaware courts at the time subdivision (10) of section 122 of title 8 of the Delaware Code was in effect. Consequently, the *Blish* case must be viewed as highly persuasive if not controlling authority for permitting recovery in the instant proceeding.

In any event, Judge MARKEWICH and I would give article TENTH and the statute underlying it a broad reading to effectuate the legislative intent of reimbursing corporate officers in a wide spectrum of situations. A Grand Jury investigation is a

criminal investigative proceeding (38 Am Jur 2d, Grand Jury, § 1) that falls within the ambit of the word "proceeding" as used in article TENTH.

Likewise, we find the plaintiff to be a "party" within the contemplation of article TENTH. It is highly unlikely that Assistant United States Attorney Robbins would have advised the plaintiff to hire an attorney unless the plaintiff was, in fact, a "target" of the Grand Jury investigation. Furthermore, the plaintiff was given "use" but not "transactional" immunity under section 6001 *et seq.* of title 18 of the United States Code. Therefore, if the Chief of the Anti-trust Division had concluded at a later time that the plaintiff did not co-operate fully or testify candidly before the Grand Jury, he could have subsequently recommended that charges be brought against the plaintiff. In the chief's letter of August 25, 1977, he refers to the fact that independent evidence had already been gathered against the plaintiff. Considered as a whole, the foregoing evidence conclusively establishes that the plaintiff was a "target" of the Grand Jury investigation and that he actually faced a threatened criminal proceeding when he hired counsel. The plaintiff, just as the corporate officer under investigation in *Blish,* is entitled to be treated as a "party", rather than a mere "information witness", for purposes of indemnification under article TENTH. In light of the fact that the plaintiff was never adjudged liable for misconduct in the performance of his duties, he further qualified for indemnification under article TENTH. For the foregoing reasons, plaintiff is entitled to recover under article TENTH.

■ Recovery is also warranted under Delaware's present mandatory indemnification statute (Del Code, tit 8, § 145, subd [c]). The latter section relates to the actual defense of a "proceeding" mentioned in the permissive indemnification statute (Del Code, tit 8, § 145, subd [a]). Under the prior discussion relating to article TENTH, we established that the plaintiff was a "party" in the contemplation of Delaware's former indemnification statute; we make that same ruling with regard to the present statute. (Del Code, tit 8, § 145, subd [a].) Clearly, a Grand Jury investigation is covered under subdivision (a) of section 145 as an "investigative proceeding". Under subdivision (c) of section 145, plaintiff is entitled to recover if he has been "successful on the merits or otherwise" in the defense of that "investigative proceeding". The Delaware Superior Court has held that any result other than

conviction must be considered success in a criminal proceeding. *(Merritt-Chapman & Scott Corp. v Wolfson,* 321 A2d 138, 141, *supra.)* Analogously, any result in this proceeding other than indictment by the Grand Jury should be considered success for purposes of the mandatory indemnification statute. Thus, partial summary judgment must be granted to the plaintiff on the issue of liability and an assessment must be ordered on the reasonable value of the attorneys' fees incurred by him.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (SHAINSWIT, J.), entered July 7, 1978, denying plaintiff's motion for summary judgment declaring defendant liable for indemnification, and granting defendant's cross motion for summary judgment declaring it was not liable for indemnification, should be reversed, on the law, and plaintiff's motion granted and defendant's motion denied, and the matter remanded for an assessment of reasonable attorneys' fees, with costs.

FEIN, MARKEWICH and SILVERMAN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on July 7, 1978, reversed, on the law, and plaintiff's motion granted and defendant's motion denied, and the matter remanded for an assessment of reasonable attorneys' fees. Appellant shall recover of respondent $75 costs and disbursements of this appeal.